The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAPHAEL A. SANCHEZ,<br><br>Defendant. | NO. 18-CR-00040-RSL<br><br>**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM** |

Defendant Raphael A. Sanchez abused his position of public trust to prey on our nation's immigrants and line his pockets with the credit of some of the most vulnerable members of our society. As Chief Counsel of the Immigration and Customs Enforcement's (ICE) Office of Principal Legal Advisor (OPLA) in Seattle, Washington, Sanchez was entrusted with ensuring the honest enforcement of the United States' immigration laws; he was responsible for overseeing immigration removal proceedings in four states, litigating on behalf of the United States, and providing legal counsel to ICE personnel. But Sanchez betrayed that trust. Over a period of years, he exploited numerous victim aliens, defrauded major financial institutions, and monetized his position of public trust.

On February 15, 2018, Sanchez pleaded guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. The parties agreed to jointly recommend a total sentence of 48 months' imprisonment, with 24

United States' Sentencing Memorandum
U.S. v. Sanchez (2:18-CR-00040-RSL) - 1

UNITED STATES
DEPARTMENT OF JUSTICE
PUBLIC INTEGRITY SECTION
1400 NEW YORK AVENUE N.W
WASHINGTON, D.C. 20005
(202) 514-1412

months' imprisonment for each count, to run consecutively.  This sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense and to adequately deter future criminal conduct.  *See* 18 U.S.C. § 3553(a).  Therefore, the United States requests that the Court impose a sentence of four years of imprisonment.

**I.**      **Factual Background**

From late 2013 through late 2017, Sanchez orchestrated and executed a scheme to exploit the personally identifying information of numerous victim aliens, including K.K., F.S., S.L., R.H., M.P., R.K., and N.Y (collectively, the "Victim Aliens"), each of whom was particularly vulnerable given their status as deported or otherwise excludable.  Sanchez used the resources at his disposal as a high-ranking ICE attorney to further his scheme.  Sanchez used ICE computer database systems and the official hard copies of immigration files to obtain the personally identifying information of the Victim Aliens, including their names, Social Security numbers, birth dates, phone numbers, and current and former addresses.

With this data in hand, Sanchez used his government computer to create counterfeit identification documents in the Victim Aliens' names, including Social Security cards and Washington State driver's licenses.  Sanchez affixed his own photograph onto the forged identification documents using the information of male Victim Aliens.  To forge female Victim Aliens' identifications, Sanchez was even more brazen:  he used the photograph of a murdered woman published in press accounts and the names of female Victim Aliens.

Armed with these newly minted, forged identification documents, Sanchez opened credit cards, email accounts, and bank accounts in the names of the Victim Aliens, listing his own Seattle residence as the Victim Aliens' addresses on account paperwork.  Sanchez cunningly avoided

United States' Sentencing Memorandum
U.S. v. Sanchez (2:18-CR-00040-RSL) - 2

UNITED STATES
DEPARTMENT OF JUSTICE
PUBLIC INTEGRITY SECTION
1400 NEW YORK AVENUE N.W
WASHINGTON, D.C. 20005
(202) 514-1412

detection of his scheme, going to such devious lengths as to manufacture a false earnings-and-leave statement (using ICE's own format) in the name of one of the Victim Aliens. Sanchez also created public utility accounts as purported proof of the Victim Aliens' residence and corresponded with credit bureaus in the names of Victim Aliens to keep their suspicions about fraud at bay.

Once the accounts were opened, Sanchez opened lines of credit, took out personal loans, transferred funds, manipulated the Victim Aliens' credit bureau files, and purchased goods using credit cards issued in their names. To maximize his ill-gotten gains, Sanchez monitored the Victim Aliens' credit scores to determine which of them had the most available credit. He corresponded with credit bureaus in the names of Victim Aliens to change their registered addresses to his home address—and when the accounts were flagged as potentially fraudulent, Sanchez doubled down on his deception, disputing the characterization of the accounts as fraudulent with letters written in the Victim Aliens' names.

Sanchez used a corporation named "Royal Weddings," an Amazon Marketplace account, and businesses operating under various trade names, including "Cool and Quirky Classic Cars," "Cool and Quirky Cars," and "Integral USA," to transfer fraudulent proceeds from accounts in the names of the Victim Aliens to his own personal accounts. Sanchez, acting as both merchant and customer, made charges or drew payments in the names of Victim Aliens to himself or to entities that he controlled. Sanchez used mobile payment services such as Square to process the transactions, making it appear as if the Victim Aliens were merely making purchases and to avoid detection.

All told, Sanchez defrauded major financial institutions, including American Express, Bank of America, Capital One, Citibank, Discover, and JPMorgan Chase & Co., of approximately

UNITED STATES
DEPARTMENT OF JUSTICE
PUBLIC INTEGRITY SECTION
1400 NEW YORK AVENUE N.W
WASHINGTON, D.C. 20005
(202) 514-1412

$190,345.63. Meanwhile, many of the Victim Aliens left the United States unaware of the debts that Sanchez incurred in their names and that these substantial balances were due, owing, and growing.

Sanchez's appetite for avarice was not sated by this scheme alone. He also lied to the IRS, claiming that during tax years 2014, 2015, and 2016, R.H., M.P., and R.K. were his dependent family members so that he could obtain unentitled deductions or credits on his taxes. And Sanchez's scheme was only just beginning; a search of his residence revealed Legal Permanent Resident cards or other official documents of numerous other individuals in immigration proceedings with ICE.

## II. Applicable Law

In *United States v. Booker*, the Supreme Court rendered the Sentencing Guidelines advisory. 543 U.S. 220, 260 (2005); *see also United States v. Kimbrough*, 552 U.S. 85, 90 (2007) (stating that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence"). *Booker* and its progeny instruct that a district court must "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with necessary correctional treatment. The court should also consider the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the kinds of sentences and the sentencing range established by the Guidelines; any pertinent policy statement; the need to avoid unwarranted sentencing disparities among defendants with similar records who have been

United States' Sentencing Memorandum
U.S. v. Sanchez (2:18-CR-00040-RSL) - 4

UNITED STATES
DEPARTMENT OF JUSTICE
PUBLIC INTEGRITY SECTION
1400 NEW YORK AVENUE N.W
WASHINGTON, D.C. 20005
(202) 514-1412

found guilty of similar conduct; and the need to provide restitution to any victims of the offense. 18 U.SC. § 3553(a)(1)-(7).

The sentencing court is to begin by determining the applicable Guidelines range, looking to the Guidelines as "the 'starting point and the initial benchmark.'" *Kimbrough*, 552 U.S. at 108 (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). After allowing the parties to argue for a sentence they deem appropriate, the court should consider all of the § 3553(a) factors to determine if they support the sentence suggested by the parties. *Gall*, 552 U.S. at 50. *Gall* further directs that should the sentencing court vary from the Guidelines, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one").

### III. Discussion

#### A. The Applicable Sentencing Guidelines

The stipulated Guidelines in the Plea Agreement mirror those contained in the Presentence Investigation Report. *See* ECF Docket Entry (D.E.) 6; PSR pp. 6-7. Using the 2016 Sentencing Guidelines, the parties and probation officer begin with a Base Offense Level of 7 pursuant to § 2B1.1(a)(1) of the Guidelines.

The parties and the probation officer also agree that several specific offense characteristics enhance Sanchez's offense level. Since the loss amount is more than $150,000, but less than $250,000, a ten-level enhancement applies pursuant to § 2B1.1(b)(1)(F). Additionally, since Sanchez employed "sophisticated means" under § 2B1.1(b)(10)(C), a two-level enhancement applies. *See* Application Note 9(B) to § 2B1.1(b)(10)(C) (defining "sophisticated means" as

United States' Sentencing Memorandum
U.S. v. Sanchez (2:18-CR-00040-RSL) - 5

UNITED STATES
DEPARTMENT OF JUSTICE
PUBLIC INTEGRITY SECTION
1400 NEW YORK AVENUE N.W
WASHINGTON, D.C. 20005
(202) 514-1412

"especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense"). Sanchez's scheme was not a momentary lapse of judgment or a simple falsehood. Over a period of years, he fashioned an intricate web of deception to accomplish and conceal his scheme. The "sophisticated means" enhancement applies because of Sanchez's dozens of lies that included opening counterfeit financial accounts and phony email addresses, creating sham business entities to act as conduits, and crafting an intricate paper trail of falsified official documents and forged correspondence. *See, e.g.*, *United States v. Tanake*, 743 F.3d 1296, 1307 (9th Cir. 2014) (upholding a "sophisticated means" enhancement where the defendant engaged in "dozens of various acts," including fabricating financial documents and checks, to conceal his fraud); *United States v. Horob*, 735 F.3d 866, 872 (9th Cir. 2013) (per curiam) (affirming application of the "sophisticated means" enhancement where the defendant fabricated documents and crafted a lengthy paper trail that made it hard to discover his fraud).

Because Sanchez's victims were particularly vulnerable, an additional two-level enhancement is warranted under U.S.S.G § 3A1.1(b). The relevant application note defines "vulnerable victim" as a person unusually vulnerable to the offense due to "age, or physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G § 3A1.1(b) cmt. n. 2. The note explains that this subsection

> applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability. The adjustment would apply, for example, in a fraud case in which the defendant marketed an infective cancer cure or in a robbery in which the defendant selected a handicapped victim.

*Id.* Here, Sanchez targeted individuals who had been deported or were otherwise excludable from the United States, leaving them unlikely to discover that he had stolen their identities and

United States' Sentencing Memorandum
U.S. v. Sanchez (2:18-CR-00040-RSL) - 6

UNITED STATES
DEPARTMENT OF JUSTICE
PUBLIC INTEGRITY SECTION
1400 NEW YORK AVENUE N.W
WASHINGTON, D.C. 20005
(202) 514-1412

unequipped to report it.   In *United States v. Mendoza*, 262 F.3d 957 (9th Cir. 2001), the Ninth Circuit upheld application of the "vulnerable victim" enhancement to a scheme targeting immigrants who lacked legal status.  For the reasons articulated in *Mendoza*, that enhancement applies here.  *See id.* at 961-62 (finding victims vulnerable where "they were in the United States illegally," leaving the defendant "confident they would not check on him or report him, they were unfamiliar with United States immigration law, they were not well educated," and "they could not speak or read English"); *see also United States v. Wetchie*, 207 F.3d 632, 634 (9th Cir. 2000) (finding that the enhancement applies to one who is "less able to resist than the typical victim of the offense of conviction").

Finally, U.S.S.G. § 3B1.3 increases a defendant's offense level by two levels "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense."  The key question is whether the defendant is "a professional or manager who, because of his or her special knowledge, expertise, or managerial authority, is trusted to exercise substantial discretionary judgment." *United States v. Laurienti*, 611 F.3d 530, 555 (9th Cir. 2010) (quoting *United States v. Contreras*, 593 F.3d 1135 (9th Cir. 2010) (en banc) (per curiam)) (internal quotations omitted).  Moreover, the relevant application note provides that the enhancement refers to "a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)."  U.S.S.G. § 3B1.3, n.1.

Here, Sanchez was elevated to a position of leadership as a regional OPLA supervisor with enforcement responsibility over four states.  His supervisory position allowed him to access sensitive personally identifying information of a particularly vulnerable class of victims without

United States' Sentencing Memorandum
U.S. v. Sanchez (2:18-CR-00040-RSL) - 7

UNITED STATES
DEPARTMENT OF JUSTICE
PUBLIC INTEGRITY SECTION
1400 NEW YORK AVENUE N.W
WASHINGTON, D.C. 20005
(202) 514-1412

raising suspicion. Sanchez was able to conceal his scheme because he supervised his workplace and those most likely to discover his conduct. He used his position to requisition immigration alien files and to secure the services of an employee who was a notary public. Given Sanchez's broad professional discretion, supervisory authority, and ability to conceal his scheme, the "abuse of trust" enhancement applies.

    As provided in the Plea Agreement and Presentence Investigation Report, the United States submits that Sanchez is entitled to a three-level reduction for timely acceptance of responsibility. Sanchez pled guilty early in this investigation; his act of voluntarily seeking to be detained pending sentencing shows a capacity for rehabilitation. Accordingly, assuming that the Court finds that Sanchez has a Criminal History Category of I, the applicable Guideline range for Count One is 20. Based on these calculations, Sanchez's Sentencing Guidelines range is 33 to 41 months for Count One. Pursuant to U.S.S.G. § 2B1.6(a), a defendant convicted of violating 18 U.S.C. § 1028A must be sentenced to the term of imprisonment required by statute. The Guideline sentence for Count Two is 24 months of imprisonment, to be served consecutive to Count One. Therefore, according to the Presentence Investigation Report, Sanchez's Guidelines Sentence Range for Count One is 33 to 41 months for Count One, plus 24 months for Count Two, to be served consecutively. *See* PSR p. 12. The Plea Agreement jointly recommends a total sentence of 48 months of imprisonment (24 months for Count One plus 24 months for Count Two). ECF D.E. 6.

United States' Sentencing Memorandum
U.S. v. Sanchez (2:18-CR-00040-RSL) - 8

UNITED STATES
DEPARTMENT OF JUSTICE
PUBLIC INTEGRITY SECTION
1400 NEW YORK AVENUE N.W
WASHINGTON, D.C. 20005
(202) 514-1412

**B. A Four Year Sentence of Imprisonment Is Warranted**

Title 18, United States Code, Section 3553(a), identifies the factors that must be considered when imposing a sentence. The Court should consider the following factors in crafting the sentence:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)  the need for the sentence imposed –
  (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  (B)  to afford adequate deterrence to criminal conduct; . . .
(3)  the kinds of sentences available;
(4)  the kinds of sentence and the sentencing range established for –
  (A)  the applicable category of offense committed by the applicable category of defendant as set forth in the [U.S. Sentencing G]uidelines . . .
(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

18 U.S.C. § 3553(a). Applying these factors to these case, a sentence of 48 months' imprisonment is appropriate and reasonable.

### i. The Serious Nature and Circumstances of the Offense

Sanchez was entrusted with significant authority to represent the United States in crucial immigration proceedings that deeply shaped the lives of many. These proceedings concerned individuals who sought to remain in America or dreamed of becoming Americans—and Sanchez carried the heavy responsibility of speaking for the American government itself, giving voice to the principles of our immigration system and advocating for its fair administration. Sanchez abandoned the principles he swore to uphold and used his authority merely as a vehicle for personal profit. He left numerous victims to suffer in his wake. More broadly, his greed may have diminished the public's trust in the honest services of its government.

United States' Sentencing Memorandum
U.S. v. Sanchez (2:18-CR-00040-RSL) - 9

UNITED STATES
DEPARTMENT OF JUSTICE
PUBLIC INTEGRITY SECTION
1400 NEW YORK AVENUE N.W
WASHINGTON, D.C. 20005
(202) 514-1412

### ii. Defendant's History and Characteristics

A sentence of 48 months' imprisonment is supported by the history and characteristics of the defendant. Whatever challenges Sanchez faced in his childhood, there can be no doubt that he ultimately overcame those challenges to become a successful attorney employed by the federal government. After graduating from Alverina College, he earned his law degree from Penn State School of Law in 2001. The same year, he was hired as an attorney for ICE. Sanchez enjoyed a privileged life, with both a stable position and a significant salary: in 2018, his gross income was approximately $162,000 per year, and the PSR estimates that his total net worth is $702,300.

Sanchez's law degree and high earning capacity do not merit favorable treatment. "Criminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime." *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999). Sanchez received all the benefits that a higher education had to offer. Instead of using those benefits for good, Sanchez used them to defraud with a willful clarity of purpose.

Moreover, the Guidelines account for Sanchez's lack of criminal history. The Court need not award him additional credit. That he is a first-time offender is not atypical; so are more than two-thirds of those who stand convicted of economic offenses in federal court.[1] Sanchez's case illustrates why this statistic is logical: a criminal history would jeopardize the law license and, more broadly, the professional reputation essential to obtaining such a position of trust.

---

[1] *Length of Imprisonment for Offenders in Each Criminal History Category by Primary Offense Category*, Fiscal Year 2014 (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2014/Table14.pdf).

United States' Sentencing Memorandum
U.S. v. Sanchez (2:18-CR-00040-RSL) - 10

UNITED STATES
DEPARTMENT OF JUSTICE
PUBLIC INTEGRITY SECTION
1400 NEW YORK AVENUE N.W
WASHINGTON, D.C. 20005
(202) 514-1412

The PSR also identified two separate bases that may warrant a possible variance from the applicable Guidelines range. *See* PSR, ¶ 83, p. 14. Sanchez's past history, though certainly lamentable and worthy of sympathy, do not mitigate his egregious conduct in this case. Moreover, Sanchez's early acceptance of responsibility, history, and characteristics have been accounted for; he received a sentence recommendation nine months below the low end of the applicable Guidelines range for Count One.

### iii.  The Need for the Sentence Imposed

A substantial prison sentence for Sanchez is essential to accomplish the relevant purposes of § 3553(a)(2); that is: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] (B) to afford adequate deterrence to criminal conduct . . . ." 18 U.S.C. § 3553(a)(2). A term of 48 months of imprisonment addresses the seriousness of Sanchez's corrupt actions, which betrayed the public's trust in government and damaged the immigration system.

A term of 48 months of imprisonment would also send a strong message to current and future government employees that corruption will not be tolerated. Such deterrence is an essential goal of white-collar sentences. "Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.' Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting in part Stephanos Bibas, *White-Collar Plea Bargaining and Sentencing After* Booker, 47 WM. & MARY L. REV. 721, 724 (2005)); *see also United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir.

United States' Sentencing Memorandum
U.S. v. Sanchez (2:18-CR-00040-RSL) - 11

UNITED STATES
DEPARTMENT OF JUSTICE
PUBLIC INTEGRITY SECTION
1400 NEW YORK AVENUE N.W
WASHINGTON, D.C. 20005
(202) 514-1412

2012) ("general deterrence is an important factor in white-collar cases, where the motivation is greed"); U.S.S.G. Ch. 1 Pt. A(4)(d) ("[T]he definite prospect of prison [for economic crime], even though the term may be short, will serve as a significant deterrent, particularly when compared with pre-guidelines practice where probation, not prison, was the norm.").

## IV.  Conclusion

Sanchez sold his principles for profit.  In so doing, he victimized uniquely vulnerable individuals who were unequipped to hold him accountable, weakened the public's trust in the immigration process, and debilitated its faith in the honest services of government.  Sanchez's actions may give an individual second thoughts about providing information to the government in a variety of contexts.  Given the gravity of the offense and the societal interests affected, a significant period of incarceration is warranted.  The Court's sentence should reflect that the conduct forming the basis of Sanchez's guilty plea was egregious, carefully planned over years, and deliberate.  A sentence of four years of imprisonment is sufficient, but not greater than necessary, to impress upon Sanchez the seriousness of the offense, to deter future cases of corruption, and to protect the public.

For the reasons set forth above, the United States respectfully requests that the Court sentence Sanchez to a 24-month term of imprisonment for Count One consecutive to a 24-month term of imprisonment for Count Two, followed by a five-year term of supervised release, and restitution in the amount of $190,345.63, which is mandatory and stipulated by the parties.  18 U.S.C. § 3663A; ECF D.E. 6; PSR, ¶ 81, p. 14.

United States' Sentencing Memorandum
U.S. v. Sanchez (2:18-CR-00040-RSL) - 12

UNITED STATES
DEPARTMENT OF JUSTICE
PUBLIC INTEGRITY SECTION
1400 NEW YORK AVENUE N.W
WASHINGTON, D.C. 20005
(202) 514-1412

| | |
|---|---|
| | Respectfully submitted, |
| | ANNALOU TIROL |
| | Acting Chief |
| Dated: June 12, 2018 | By: /s/ Jessica Harvey |
| | LUKE CASS |
| | JESSICA C. HARVEY |
| | Trial Attorneys |
| | Criminal Division |
| | Public Integrity Section |
| | United States Department of Justice |
| | 1400 New York Avenue, NW |
| | Washington, DC  20005 |

United States' Sentencing Memorandum
U.S. v. Sanchez (2:18-CR-00040-RSL) - 13

UNITED STATES
DEPARTMENT OF JUSTICE
PUBLIC INTEGRITY SECTION
1400 NEW YORK AVENUE N.W
WASHINGTON, D.C. 20005
(202) 514-1412

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

*/s/ Jessica C. Harvey*
LUKE CASS
JESSICA C. HARVEY
Trial Attorneys
Criminal Division
Public Integrity Section
United States Department of Justice
1400 New York Avenue, NW
Washington, DC  20005

United States' Sentencing Memorandum
U.S. v. Sanchez (2:18-CR-00040-RSL) - 14

UNITED STATES
DEPARTMENT OF JUSTICE
PUBLIC INTEGRITY SECTION
1400 NEW YORK AVENUE N.W
WASHINGTON, D.C. 20005
(202) 514-1412