THE HONORABLE ROBERT S. LASNIK
Sentencing:  JUNE 28, 2017 11:00 a.m

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

RAPHAEL SANCHEZ,

Defendant.

NO. CR18-00040L

DEFENDANT RAPHAEL SANCHEZ'S
SENTENCING MEMORANDUM

**INTRODUCTION**

The Government describes Raphael Sanchez as a cunning and devious man with an appetite for avarice who sold his principles for profit.  Mr. Sanchez admits that he abused a position of public trust and used sophisticated means to defraud several individuals and entities including some who were particularly vulnerable.  But like all men, Raphael Sanchez is far more than this, the worst thing he has ever done.  Raphael Sanchez survived a brutal upbringing to build a life that could be viewed, at least from the outside looking in, as privileged, stable and

*DEFENDANT'S SENTENCING MEMORANDUM - 1*

Law Offices of Cassandra Stamm, PLLC
Safeco Plaza
1001 Fourth Avenue Suite 4400
Seattle, Washington 98154
tel:  (206) 264-8586
fax:  (206) 447-1427

significant. Unfortunately, Raphael Sanchez never acquired the tools necessary to surmount the crippling psychological deficits resulting from his adverse childhood experiences and these deficits ultimately led him to thoroughly sabotage all that he worked for so long and so hard to achieve by committing this serious offense.

Pursuant to his plea to wire fraud and aggravated identity fraud, Raphael Sanchez is scheduled to be sentenced by this Honorable Court on Thursday, June 28, 2018, at 11:00 am. Probation and the parties agree a term of 48 months imprisonment is sufficient, but not more than necessary to achieve the aims of sentencing. Mr. Sanchez respectfully submits this memorandum in support of the agreed joint sentencing recommendation.

## FACTS

Raphael Sanchez was born in Puerto Rico in 1974. Presentence Investigation Report (hereinafter "PSR") at ¶ 44. His parents were uneducated and when Raphael was just three years old, they brought him as well as his older brother and sister to New Jersey in search of a better life and better opportunities. *Id.* at ¶ 45. In New Jersey, Raphael's father found a decent job that allowed him to feed his young family—and his alcoholism. *Id.* at ¶¶ 45-46.

Prior to his father's death, Raphael and his family lived in an apartment where Raphael's father routinely and severely beat his mother so badly that Raphael feared his mother would eventually be killed. *Id.* at ¶ 46; see also, Letter from Veronica Sanchez, filed herewith as Appendix A. Raphael's father drank every day and also beat his older sister and brother. PSR at ¶ 46.

To survive in this environment, Raphael became the favorite, currying his father's favor (and avoiding his beatings) by dissociating from his emotions and striving in all areas including especially academics to please him. *Id.;* App. A. This pattern of survival continued until

Law Offices of Cassandra Stamm, PLLC
Safeco Plaza
1001 Fourth Avenue Suite 4400
Seattle, Washington 98154
*DEFENDANT'S SENTENCING MEMORANDUM - 2*
tel: (206) 264-8586
fax: (206) 447-1427

Raphael was twelve years old and became a fundamental aspect of his psyche. *See,* Forensic Psychological Evaluation of Dr. Laura Brown (filed herewith under seal as Appendix B). Over these formative years, Raphael learned to avoid emotion which at that time would have meant experiencing nearly constant terror and suffering and instead narrowly focus on what he could control: being quiet, avoiding conflict with his father, and doing well in school. App. B.

When his father died unexpectedly, Raphael Sanchez's world fell apart. His mother moved Raphael to Pennsylvania; his siblings were left behind. PSR at ¶ 48. Raphael remained apparently dissociated from his emotions but those emotions manifested as high levels of general chronic anxiety and non-organic somatic symptoms. App. B at p. 4. It was at this time that Raphael began a pattern of reckless and self-sabotaging behavior that continued into his adult life. *Id.*

Despite or perhaps because of all this, Raphael Sanchez was driven to create a better life for himself. He finished high school then continued his education through law school at Pennsylvania State University, Dickenson School of Law. PSR at ¶¶ 62-64. In law school, Raphael contributed to important research and writing projects concerning issues he cared about deeply: racial profiling, human rights and immigration policy, and free speech.[1]

Upon his graduation from law school Raphael Sanchez started working for U.S. Immigration and Customs Enforcement (hereinafter "ICE") . His work was his life and Raphael quickly rose through the ranks. Raphael Sanchez was liked and respected by his coworkers. *See,* Letters from Maureen Gaffney and Kelly Ort, filed herewith as Appendix C. With ICE,

---

[1] *See,* Victor C. Romero, *Racial Profiling: "Driving While Mexican" and Affirmative Action*, 6 Mich. J. Race & L. 195, 195 n.* (2000) (available at: https://repository.law.umich.edu/mjrl/vol6/iss1/5); Victor C., Romero, *On Elián and Aliens: A Political Solution to the Plenary Power Problem*, N.Y.U. J. Legis. & Pub. Pol'y, Vol. 4, No. 343, 343 n* (2001) (available at https://elibrary.law.psu.edu/cgi/viewcontent.cgi?article=1146&context=fac_works); Victor C. Romero, *Restricting Hate Speech Against Private Figures: Lessons in Power-Based Censorship from Defamation Law*, 33 Colum. Hum. Rts. L. Rev. 1, 1 n.* (2001) (available at https://elibrary.law.psu.edu/cgi/viewcontent.cgi?article=1114&context=fac_works).

Law Offices of Cassandra Stamm, PLLC
Safeco Plaza
1001 Fourth Avenue Suite 4400
Seattle, Washington 98154
tel: (206) 264-8586
fax: (206) 447-1427

Raphael Sanchez threw himself into assignments directed at curbing human smuggling and other serious transnational criminal activities in Central and South America.[2] He also worked with ICE's Human Rights Violators and War Crimes Unit to identify and quickly remove Juan Miguel Mendez, an Argentinian citizen wanted for torture and disappearances at two clandestine prisons during Argentina's "Dirty War."

In 2011, Raphael Sanchez was promoted to chief counsel for ICE in Seattle. That same year, then-ICE director John Morton issued a memorandum encouraging the exercise of purposeful discretion not to assert the full scope of ICE's enforcement authority in cases not implicating national security or public safety.[3] Under Raphael Sanchez's direction, this discretion was liberally exercised throughout Alaska, Idaho, Oregon, and Washington. For example, from 2011 – 2015 the total percentage of all ICE cases resolved as a result of prosecutorial discretion was 6.7%. In Seattle, the percentage was 26.3%, second only in the nation to Tucson, Arizona.[4]

While he was doing this work, Raphael Sanchez was also committing the instant offense. As a result, Raphael Sanchez has resigned from his position at ICE and relinquished his license to practice law. Mr. Sanchez pled guilty at arraignment, stipulating to a detailed statement of facts and an agreed recommendation that he be sentenced to 48 months imprisonment. He voluntarily surrendered to effectively begin serving his sentence on the date

---

[2] Raphael Sanchez played an important role for ICE in "Operation Citadel," a human smuggling investigation documented in a series by National Geographic called *Chain of Command* (available at http://channel.nationalgeographic.com/u/kc-zX8j2ZkRrBVD7uHGWEzypxWRi0ccx89GqSQLNVL034Bcr3KVngg9T9QSeY5OBiUibyVo/).

[3] Morton's memorandum is available at https://www.ice.gov/doclib/secure-communities/pdf/prosecutorial-discretion-memo.pdf.

[4] These statistics mentioned here were collected and reported by Syracuse University's Transactional Records Access Clearinghouse and are available at http://trac.syr.edu/immigration/reports/382/.

*DEFENDANT'S SENTENCING MEMORANDUM - 4*

Law Offices of Cassandra Stamm, PLLC
Safeco Plaza
1001 Fourth Avenue Suite 4400
Seattle, Washington 98154
tel: (206) 264-8586
fax: (206) 447-1427

of his plea, February 15, 2018. He is contrite and tearfully discussed his regret and remorse for the offense during the presentence investigation process. PSR at ¶ 23.

## ARGUMENT

The parties and probation agree Mr. Sanchez's offense is serious and warrants appropriate punishment including imprisonment as a result. But the parties and probation also agree a term of 48 months imprisonment is sufficient. As indicated by the Government, a "term of 48 months of imprisonment addresses the seriousness of Sanchez's corrupt actions . . . sends a strong message to current and future government employees that corruption will not be tolerated . . . [and] is sufficient, but not greater than necessary, to impress upon Sanchez the seriousness of the offense, to deter future cases of corruption, and to protect the public." United States of America's Sentencing Memorandum at p. 11-12. And per probation:

> a 48-month sentence is a substantial penalty for serious felony criminal conduct. Given all of the defendant's positive actions since his arrest, his troubled childhood, and his mental health concerns we think a higher sentence may well be greater than necessary to achieve the aims of sentencing.

PSR Sentencing Recommendation at p. 4.

In considering this agreed recommendation and sentencing Mr. Sanchez, the Court must consider the advisory guidelines as well as the factors laid out at 18 U.S.C. § 3553. The parties and probation calculate Mr. Sanchez' total offense level as 20. Given that he has no criminal history, the advisory range on the wire fraud count is 33 – 41 months in prison. The aggravated identity fraud count carries a mandatory consecutive 24 month term of imprisonment. The recommended term of 48 months total imprisonment is 9 months less than the low-end of the advisory range.

*DEFENDANT'S SENTENCING MEMORANDUM - 5*

Law Offices of Cassandra Stamm, PLLC
Safeco Plaza
1001 Fourth Avenue Suite 4400
Seattle, Washington 98154
tel: (206) 264-8586
fax: (206) 447-1427

1

2

3

4

5

6

The Guidelines are at most only at touch-stone in the Court's analysis. *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009). Not only is a range of imprisonment calculated according to the Guidelines not mandatory, it need not even be presumed to be reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009) ("The Guidelines are not only not mandatory on the sentencing courts; they are also not to be presumed reasonable.").

7

8

9

10

11

12

13

14

15

16

17

The Court must ultimately fashion a sentence that is sufficient, but not more than necessary, considering the history and characteristics of the defendant, the need for the sentence to promote respect for the law and provide just punishment for the offense, the need to afford adequate deterrence, the need to protect the public from further crimes of the defendant, the need to provide the defendant with needed training or treatment, and the different kinds of sentences available. 18 U.S.C. § 3553; *see also, United States v. Carty*, 520 F.3d 984, 991 (9th Cir.), *cert. denied*, 553 U.S. 1061 (2008). The resulting sentencing determination is of necessity "a difficult art" based on the particular person being sentenced and the circumstances of the crime that this particular person committed. *United States v. Diaz-Argueta*, 447 F.3d 1167, 1172 (9th Cir. 2006), *cert. denied*, 558 U.S. 1047 (2010).

18

19

20

21

22

23

24

25

26

Mr. Sanchez's history is remarkable. He grew up in an extremely violent and unpredictable household where he was abused and neglected as well as exposed to serious domestic violence by his father against his mother, his father's alcoholism and his older brother's drug abuse, mental illness, parental separation, the death of his father, as well as his mother's second husband's criminality and death. App. B. Not surprisingly, Raphael developed serious psychological issues and a variety of problematic coping strategies including addictive and compulsive behaviors, self-destructive and risky behaviors, problematic interpersonal relationships, sleep disturbances, poor judgment and problems of emotional regulation. *Id.* He

Law Offices of Cassandra Stamm, PLLC
Safeco Plaza
1001 Fourth Avenue Suite 4400
Seattle, Washington 98154
tel: (206) 264-8586
fax: (206) 447-1427

became very dissociated from his emotions with concomitant high levels of anxiety due to the repeated activation of his stress response system during childhood. *Id.* Of course, all this is not anything that Mr. Sanchez ever wanted or consciously intended. These are strategies he unconsciously adopted when he was just a little boy to survive in an environment no one would willingly choose or seek out for themselves or for their child.

The Government argues that Mr. Sanchez ultimately overcame these challenges to enjoy a privileged life. United States of America's Sentencing Memorandum at p. 10. If only this were true. While Raphael Sanchez was in Seattle supposedly enjoying this 'privileged life,' he was suffering. He was disengaged from the world. PSR Addendum (letter from Raphael Sanchez). He did not know how to connect and when he tried to do so, the result was "miserable and hurtful failure." *Id.* He had recurrent nightmares and abused prescription sleep aids at dangerously high levels. *Id.; see also,* PSR at ¶ 60; App. B. In his words:

> By the time I moved to Seattle in late 2011, I found myself even more isolated and life became compounded by financial difficulties, depression, constant fatigue, and yet another failed relationship that hurt immensely when it ended. It became a perfect storm that did not allow me to see the hurtfulness and wrongfulness of my actions. My thoughts became even more distorted. My indifference toward my safety and self-destructive behavior peaked during this time. I pretended I needed no one and thought material things would bring me happiness, even if temporarily. I created an intricate, beautiful, yet soul-less house of cards that suddenly came crashing down.

PSR Addendum (letter from Raphael Sanchez). Dr. Brown offers additional insight and clarity. App. B. Mr. Sanchez's serious and multiple adverse childhood experiences left him with serious mental health problems that put him at risk for committing the offenses for which he is now incarcerated:

> [Mr. Sanchez's] self-hatred, self-neglect, dissociation from fear, and inability to be concerned for his own welfare, all the results of his childhood complex trauma, made it possible for him to engage in behaviors that were so dangerous

*DEFENDANT'S SENTENCING MEMORANDUM - 7*

Law Offices of Cassandra Stamm, PLLC
Safeco Plaza
1001 Fourth Avenue Suite 4400
Seattle, Washington 98154
tel: (206) 264-8586
fax: (206) 447-1427

and wrong precisely because they were illegal and so very likely to strip him of everything that made him appear to be a good person and a law-abiding citizen.

*Id.* at p. 7-8.

Prior to the discovery of his offense, Mr. Sanchez never received any sort of treatment for his childhood trauma and resulting issues. Before he self-surrendered, Mr. Sanchez began that difficult process and only then started to confront and understand the extent and effect of his trauma history. Herein lies the promise for Raphael Sanchez's future. Raphael Sanchez does have a lot of assets. He is intelligent and educated and he speaks two languages fluently. He is happiest when he is helping others and his management skills are substantial. If he is able to understand and address the effects of his childhood trauma including his substance abuse, he will be able to move forward upon his release from imprisonment with a more fulfilling and productive life and the psychological dynamics that put him at risk for committing the instant offense will be addressed.

For now, Raphael Sanchez is doing all he can to address all this directly. He has resigned his position at ICE, surrendered his law license, pled guilty, joined in a recommendation that he serve 48 months in prison, and voluntarily surrendered to begin serving his sentence. Given all this, a 48 month sentence will be sufficient to promote respect for the law, provide just punishment, and promote all the other valid purposes of sentencing.

///

///

///

///

///

///

*DEFENDANT'S SENTENCING MEMORANDUM - 8*

Law Offices of Cassandra Stamm, PLLC
Safeco Plaza
1001 Fourth Avenue Suite 4400
Seattle, Washington 98154
tel: (206) 264-8586
fax: (206) 447-1427

**CONCLUSION**

For all these reasons and in the interests of justice, Raphael Sanchez respectfully requests this Honorable Court impose a sentence of 48 months imprisonment with a recommended placement at FCI Loretto.

DATED this 21st day of June, 2018.

/s/ Cassandra Stamm
Attorney for Mr. Sanchez
1001 Fourth Avenue Suite 4400
Seattle, WA 98154
tel: (206) 264-8586
fax: (206) 447-1427
casey@seattlecriminalattorney.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Government.

/s/ Cassandra Stamm
Attorney for Mr. Sanchez
1001 Fourth Avenue Suite 4400
Seattle, WA 98154
tel: (206) 264-8586
fax: (206) 447-1427
casey@seattlecriminalattorney.com

*DEFENDANT'S SENTENCING MEMORANDUM - 9*

Law Offices of Cassandra Stamm, PLLC
Safeco Plaza
1001 Fourth Avenue Suite 4400
Seattle, Washington 98154
tel: (206) 264-8586
fax: (206) 447-1427

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# Appendix A

*DEFENDANT'S SENTENCING MEMORANDUM*

Law Offices of Cassandra Stamm, PLLC
Safeco Plaza
1001 Fourth Avenue Suite 4400
Seattle, Washington 98154
tel:  (206) 264-8586
fax:  (206) 447-1427

Veronica Sanchez
142 B. West Granada Avenue
Hershey, PA 17033
717-701-7380

June 21, 2018

Honorable Robert S. Lasnik
United States Courthouse
700 Stewart Street
Suite 15128
Seattle, WA 98101-9906

Dear Honorable Robert S. Lasnik,

I am writing this letter on behalf of my youngest sibling Raphael Sanchez whom I have known his entire life. In addition to being his oldest sibling, I am also a Licensed Professional Counselor and Certified Addictions Counselor.

For as long as I could remember, Raphael was a kind, caring, quiet, shy, introverted boy who always did as he was told with no behavioral or discipline issues. He was advanced in all milestones and later, academically. This is a very important piece of information, as most children in his circumstance did not function this way.

I am very familiar with the circumstances he grew up in, including an alcoholic and abusive father. It was a horrible environment for any child and he is amazingly resilient to have survived it.

Raphael Sanchez created some maladaptive coping mechanisms which helped him to stay safe and function. Some of these behaviors included dissociation, becoming someone entirely different and negative self-talk. Other behaviors were obsessive and compulsive in nature, such as extreme routine, organization, cleanliness, excessive study and obsessions over future, and over achievement. These behaviors carried out into his studies and later, his profession as an attorney. His hard work and perseverance led him to a position as Chief Counsel of Homeland Security.

Raphael was a child and adult the "fell between the cracks" as a result of his successes. His untreated mental health and maladaptive coping mechanisms led to a great source of deep shame, the abuse of sleeping pills, and behavior that resulted in this negative life consequence.

Raphael Sanchez has always been and continues to be a good person who possesses a strong sense of duty, and has always strived to do the right thing. Given his otherwise clean record, and need for mental health and drug and alcohol treatment, it is my sincere hope that you take all this into consideration at the time of his sentencing.

Sincerely,

Veronica Sanchez

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# Appendix C

Law Offices of Cassandra Stamm, PLLC
Safeco Plaza
1001 Fourth Avenue Suite 4400
Seattle, Washington 98154
tel: (206) 264-8586
fax: (206) 447-1427

Maureen C. Gaffney
4200 Livingstone Drive
York, PA 17402

**The Honorable Robert S. Lasnik**
**United States Courthouse**
**700 Stewart Street, Suite 15128**
**Seattle, WA 98101-9906**

Dear Judge Lasnik:

I am writing on behalf of Raphael A. Sanchez who will be sentenced in your court in June. I have known Raphael since September, 2002 when he transferred to the ICE Office of the Chief Counsel in York, Pennsylvania. I have worked in this office since 1996. I believe that Raphael was employed by ICE in York, PA until late 2006 when he transferred to Washington, D.C. Raphael and I became friends during the time we worked together, and I am writing this letter as his friend, and not in any professional capacity.

What impressed me the most about Raphael was his devotion and attentiveness to his family, particularly to his mother and sister. Raphael's sister, at the time, was a single mother with three young boys. Raphael was a great uncle to them. He helped his sister financially, and he often took the boys to stay with him if his sister was out of town, or just to give her a break. I know that his mother and sister relied upon him financially and emotionally. He traveled to to Reading, PA regularly to spend time with his mother.

Raphael is also very knowledgeable about cars, and he is an excellent mechanic. During the time we worked together, he assisted me in purchasing a used car, and he also helped me sell my old car. It was common knowledge in the office that he was the person to go to if you had any automotive/mechanical questions. Raphael was also very generous, purchasing Christmas gifts for everyone in the office, and bringing back gifts for all of us after he visited Mexico. When he moved to the D.C. area, he generously gave much of his furniture to several of us, myself included.

As a co-worker, Raphael was always reliable, diligent and helpful. As I recall, everyone in the office liked and respected him. I have not had much personal contact with Raphael since he left York in 2006, however, I would like you to know that during the time we worked together, he was always a kind, considerate and supportive colleague.

Thank you for taking the time to read this letter.

Respectfully,

Maureen C. Gaffney

June 8, 2018

The Honorable Robert S. Lasnik
United States Courthouse
700 Stewart Street, Suite 15128
Seattle, WA 98101-9906

RE:     Raphael A. Sanchez

Dear Honorable Lasnik,

I am writing this letter in support of my dear, dear friend, Raphael A. Sanchez. I met Raphael in or around September 2002 while we worked together at the York Immigration Court in Pennsylvania. He was a trial attorney and I worked in the Court as a legal assistant to the Immigration Judges. I could not tell you what it was about him, but we instantly created a special friendship. Because that Court was particularly small, everyone in the Court staff became great friends with everyone working at the Department of Homeland Security (DHS) and we all often attended lunches, happy hours or dinners together as a group. (People still refer to it as the "Court in the cornfield" because it truly was built on the Strickler Farm and the original courthouse was the old Strickler family farmhouse!)

As the years progressed, Raphael became like family to just about everyone who worked with him, especially to me and my husband. It wasn't unusual for me to be at his home, or for him to be at ours. I suddenly realized that I couldn't remember a time in my life when he wasn't there. He has a heart of gold, an incredible sense of humor and a quick wit. In his professional life, I saw him grow as an attorney and quickly rise to the top of his field. The Judges I worked with regarded him highly and would turn to him in a heartbeat if they needed something particular reviewed in a case.

At some point, he announced to everyone that he had taken a job in Washington, DC at DHS Headquarters. I literally felt as if my heart was being ripped out of my chest. I couldn't imagine my everyday life without him in it. As we do with our great friends, my husband and I gathered with a group of his friends and helped him move to DC. I knew, in my selfish mind, it would be the last time I'd ever see him again! Lucky for me (Raphael may say differently! LOL!) my boss asked me to go on detail to the Immigration Court in Arlington, VA. These trips lasted about 2 weeks a month for a couple years and I saw more of him once those details started than either of us could imagine.

At one point Raphael got a beautiful golden retriever puppy, Guapa. (Guapa is "beautiful" in Spanish.) I knew he loved his family and friends, but I never saw someone blossom more than when he got Guapa. He took her to a doggie daycare every day and she was sooo cute they even used her picture outside their building for promotional reasons. Guapa was his life!

Then, because Raphael is such a hard worker, he got another promotion to Chief Counsel at DHS in Seattle, WA. Once again, my heart was shattered. I kept thinking that there would be NO WAY I'd see him if he moved across the country with Guapa. As I said earlier, lucky for me (but unbelievable to Raphael!) my boss sent me to Seattle on detail! I recall Raphael saying to me "Where in the world can I go to get away from you!?!?" LOL!!!! I went there for two weeks and Raphael was the best tour guide! He took me and my husband to see the gum wall, the troll under the bridge, the Space Needle, Pike's Market and we even took the ferry over to Bainbridge Island. Some of my best memories from being out in Seattle was walking on the beach and looking at the driftwood while Guapa swam. I even have a snapshot on my coffee table of me and Raphael during my time there. He is such a true, true friend.

I am blessed to have a lot of good friends, but not many like him. He has always been very generous in every aspect of our friendship. Giving of his time, his home, his advice – whether it be regarding a car, remodeling, a paint color or a new job – there wasn't much he would turn away from when it came to his friends.

We communicated often while he lived in Seattle, whether it was through email, text messages or on the phone. I missed him terribly. In our catching up with each other's lives, he would share with me how his health was changing. He seemed depressed, which was not like him at all. I knew he had a problem sleeping and underwent some procedure to move his jaw to help with sleep apnea. Along with his problems sleeping, he also would tell me about nightmares he had but didn't understand what they meant. I also know he was very concerned with his appearance and especially the loss of his hair making him very self-conscious about his looks. I could tell that the Raphael I've known and loved for so many years certainly wasn't the same person anymore. He had a sadness to him, and I could not figure out why.

When he called to tell me that he was going to jail, I was in complete disbelief. I could not, and will not, be able to fully comprehend his thought process at that time.

Raphael is one of my best friends, and if you would have known him before he moved to Seattle, Your Honor, you would be complete disbelief just as his friends and family are.

Thank you for your time,

Kelly Ort
1515 Jefferson Davis Highway, Apt. 1522
Arlington, VA 22202
(717) 873-1654