1          UNITED STATES DISTRICT COURT

2      WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3  _____

                                    )
4   UNITED STATES OF AMERICA,       ) CR18-00040-RSL
                                    )
5              Plaintiff,           ) SEATTLE, WASHINGTON
                                    )
6   v.                              ) June 28, 2018
                                    )
7   RAPHAEL A. SANCHEZ,             ) Sentencing Hearing
                                    )
8              Defendant.           )
                                    )
9  _____

10        VERBATIM REPORT OF PROCEEDINGS
       BEFORE THE HONORABLE ROBERT S. LASNIK
11         UNITED STATES DISTRICT JUDGE

12  _____

13  APPEARANCES:

14   For the Plaintiff:     Jessica C. Harvey
                            U.S. Department of Justice,
15                          Criminal Division
                            Public Integrity Section
16                          1400 New York Avenue NW
                            Washington, D.C.  20005
17

18   For the Defendant:     Cassandra L. Stamm
                            Law Offices of Cassandra Stamm
19                          810 3rd. Avenue
                            Suite 500
20                          Seattle, WA  98104

21

22

23

24

25

1          THE COURT:  Good morning.  Thank you.  Please be seated.

2          THE CLERK:  Case CR18-40-L, United States v. Raphael

3     Sanchez.

4       Counsel, would you please make your appearances?

5          MS. HARVEY:  Good morning, Your Honor.  Jessica Harvey

6     on behalf of the United States.  With me at counsel table is

7     Special Agent Conan Smith of ICE OPR.

8          THE COURT:  All right.  Thanks very much, Ms. Harvey and

9     Agent Smith.

10          MS. STAMM:  Good morning, Your Honor.  Casey Stamm on

11     behalf of Raphael Sanchez who, for the record, is here to my

12     right.

13          THE COURT:  Hello, Mr. Sanchez and Ms. Stamm.

14       And we have Senior U.S. Probation Officer Rick Cowan, who is

15     retiring in how many months?

16          PROBATION OFFICER:  Five or six.

17          THE COURT:  Okay.  You will be sorely missed, Mr. Cowan.

18       All right.  We are here for sentencing on Mr. Sanchez's pleas

19     of guilty to one count of wire fraud and one count of aggravated

20     identity theft.

21       I have reviewed, in preparation for the sentencing today,

22     Mr. Cowan's excellent U.S. Probation presentence report, I have

23     the government's sentencing memorandum on behalf of the United

24     States, which was from Ms. Harvey, and I have Ms. Stamm's

25     sentencing memorandum on behalf of Mr. Sanchez, which included a

1  number of attachments:  some very, very strong letters of support

2  from people who he worked with and knew him well, a psychological

3  report by Dr. Laura Brown, and then another Appendix C with some

4  letters, and I have a letter accepting responsibility from

5  Mr. Sanchez.

6      So, Ms. Stamm, do I have everything you wanted me to have in

7  preparation for the sentencing?

8          MS. STAMM:  I believe so, Your Honor.

9          THE COURT:  Have you had an opportunity to go over the

10  government reports with Mr. Sanchez and make any additions or

11  corrections?

12          MS. STAMM:  I have.

13          THE COURT:  Mr. Sanchez, are you ready to proceed to

14  sentencing this morning?

15          THE DEFENDANT:  Yes, I am.

16          THE COURT:  All right.  We will start with Ms. Harvey.

17          MS. HARVEY:  Your Honor, the United States respectfully

18  requests that the Court adopt the parties' agreed recommendation

19  of a sentence of 48 months incarceration as reflected in our

20  sentencing memorandum.

21          THE COURT:  Ms. Harvey, could I ask you, please, to go

22  to the podium and address the Court?

23          MS. HARVEY:  Yes.

24          THE COURT:  Thank you.

25          MS. HARVEY:  My apologies.

1        THE COURT:  That's all right.

2        MS. HARVEY:  Continuing, Your Honor, Mr. Sanchez

3   committed a profane and a profound violation of the trust of the

4   American public.  As the Court is aware, Mr. Sanchez recorded the

5   names, dates of birth, Social Security numbers of individuals who

6   were in immigration proceedings before ICE, and these were

7   vulnerable individuals who would most likely leave the country

8   and were generally in no position to ever discover Mr. Sanchez's

9   scheme, much less to be empowered to ever report it.  Mr. Sanchez

10  exploited these individuals' data by abusing the access to

11  information that he had as an attorney and as a leader in his

12  office.  And his scheme was, of course, largely successful.

13  Mr. Sanchez ultimately defrauded financial institutions of

14  upwards of $190,000.

15       And, of course, Mr. Sanchez's scheme yielded also substantial

16  intangible losses as well.  As the Court knows, as an adult,

17  Mr. Sanchez enjoyed privileges that the majority of criminal

18  defendants will never have:  educational privileges, professional

19  privileges, financial privileges.  He had a law degree, he was a

20  GS-15-level government employee, he was bringing home a

21  significant salary.

22       And more than that, Your Honor, Mr. Sanchez was entrusted

23  with the responsibility to represent the United States.  That is

24  a weighty responsibility, and it is a position of honor that

25  demands the highest level of ethics.  Mr. Sanchez in this scheme

1   abandoned those ethics to line his pockets, and in doing that, he

2   violated not just the dignity of those victim aliens who were

3   exploited, but the faith and the trust that the American people

4   place in their government officials.  That violation warrants a

5   significant sentence of incarceration.

6        And so balancing these breaches of trust with Mr. Sanchez's

7   willingness to accept responsibility for his crimes, the United

8   States submits that a sentence of 48 months of incarceration

9   reflects the seriousness of the crimes and is sufficient to deter

10  future criminal conduct.

11       Thank you, Your Honor.

12           THE COURT:  Thanks very much.

13       Does Agent Smith want to address the Court at all?

14           AGENT SMITH:  No, Your Honor.

15           THE COURT:  Okay.  Thank you very much.  I appreciate

16  your presence here today.

17       Ms. Stamm.

18           MS. STAMM:  Thank you, Your Honor.

19       Your Honor, the defense agrees in many respects with the

20  government's description of Raphael Sanchez's conduct.  For that

21  conduct, he comes before the Court today very much remorseful and

22  regretful and prepared to accept responsibility.  We would ask,

23  however, that the Court consider the nature of the offense here.

24       At the age of roughly 40, at the top of his game essentially

25  career-wise, Raphael Sanchez made choices that sabotaged

1    everything good in his life and annihilated all that he had

2    worked for for so long.  He did that for money that he

3    essentially didn't really need.  The government is correct, he

4    was making a substantial salary.  He did it for silly goods that

5    he didn't really need and many of which he never really used.

6    They were in his garage when the government executed their search

7    warrant.

8        The government says that Raphael Sanchez did this because he

9    was cunning and devious and had a certain appetite for avarice,

10   but when you really look at the evidence in this case and what

11   Mr. Sanchez did, what you see is someone who committed a crime

12   almost entirely in a way that was destined to get him caught:  on

13   his work computer, with his work e-mail address, on his taxes.

14   In many ways the discovery in this case makes it appear as if

15   Mr. Sanchez either wanted to get caught or had almost no concern

16   whatsoever for what would happen when he did get caught, and, of

17   course, we know now what the effects of that are.

18       The why in this case is not avarice or cunning; the why in

19   this case is what's explained so eloquently by Dr. Laura Brown.

20   It is Mr. Sanchez's horrible history of childhood trauma and the

21   results of that and the untreated results of that.  It's not an

22   easy thing for someone in Mr. Sanchez's position to own up in the

23   way that he has and to, in this very real and difficult way, seek

24   out the reasons for it.  In some ways I think it would be easier

25   for Mr. Sanchez to say, "Well, you know, I got in a tough spot, I

1    needed some money, and I saw an opportunity, so I took it."

2    Instead, he's seeking out these very, very real, very difficult

3    life lessons about his upbringing and about the effects of it.

4    He's no longer walking around pretending that that history

5    doesn't exist or it doesn't affect him, and he's no longer

6    ignoring all of the failures in his life that that history has

7    led him to.  I think that speaks very, very highly of his history

8    and characteristics in a way that is meaningful today when this

9    Court is considering sentencing.

10       In addition, Your Honor, Mr. Sanchez has taken responsibility

11   in this case in really quite an extraordinary and noteworthy way.

12   He pled guilty at arraignment.  He entered into a very detailed

13   factual statement that is not in any way vague or minimized or

14   incomplete.  He agreed in that plea agreement to a four-year term

15   of imprisonment.  And he did something when he entered his plea

16   that not a single one of my other clients has done in 20 years of

17   doing this work:  He voluntarily surrendered to begin serving the

18   agreed sentence on the day of his plea.  Lots and lots of people

19   come before this Court and say they are accepting responsibility

20   and they want to accept responsibility; most of the people who

21   come to the Court at sentencing who are out of custody also say

22   that they would like a voluntary report date because there are

23   all sorts of reasons to wait to begin that process and sometimes

24   excuses not to begin that process.  Mr. Sanchez has taken the

25   opposite approach.  And when he did that, I found it, you know,

1   number one, very, very impressive that he made that choice, but

2   surprising that when I went to go visit him the first time, he

3   said still, "Yes, I'm glad I made that choice," and he never

4   wavered on it for a moment.

5         THE COURT:  Do you think that's merely a way of

6   accepting responsibility, or is it part of his pattern of saying,

7   "I don't deserve anything more than being locked up in a

8   74-square-foot cell"?

9         MS. STAMM:  I think it's some of both, and I think

10   Dr. Brown says that.  But I think that what I see in Mr. Sanchez,

11   in the six months now roughly that he's been in custody, is a

12   real desire to move forward and to put this behind him.  And this

13   is step number one.  He's agreed to a 48-month sentence.  He

14   knows essentially that he will be spending at least that much

15   time in custody, so why not get on with it.

16     He's getting on with other things as well.  He's doing work.

17   He's reading every book he can get his hands on that was

18   recommended by Dr. Brown and others that will help him in the

19   environment that he's in and moving forward when he gets out.

20   Mr. Sanchez, when he committed this offense, his whole life was

21   his job and his dog, and he has lost both of them as a result of

22   this offense.

23     In this context, especially, we agree with the government

24   that four years is a sufficient sentence to address all of the

25   factors recognized by the government and to take into account the

1  substantial history and characteristics of Mr. Sanchez.

2          THE COURT:  Thanks, Ms. Stamm.

3      Mr. Sanchez, was there anything you would like to say to me

4  at this time?  If you would please join Ms. Stamm at the podium.

5          THE DEFENDANT:  Only to say that I'm very sorry that

6  you're put in this position to judge a government attorney.

7      I think for me the biggest hurt is the intangible part -- the

8  people that I hurt, the people I disappointed -- the career that

9  was my life is gone, and I'm very sorry about it.

10     What I can tell you is that, going back to your question to

11 Ms. Stamm before, during this period of being in the Pacific

12 Northwest, I was constantly fatigued and in pain, joint pain,

13 headaches.  Psychologists and social workers diagnosed this as

14 conversion disorder.  All of those ailments went away after one

15 day that I was in prison, and that's why I don't regret the

16 decision I made.  The stress is gone.

17         THE COURT:  And when you project four years down the

18 road, Mr. Sanchez, when you come out and you are no longer an

19 attorney, you are no longer going to be easily employable in any

20 position that requires trust, what do you intend to do to rebuild

21 yourself?

22         THE DEFENDANT:  I probably will do something that is

23 within more of a passion, which is either teaching English abroad

24 or possibly go into automotive engineering.

25         THE COURT:  A number of people said you were very good

1  with cars, yes.

2      And you haven't started your actual therapy yet, correct?

3          THE DEFENDANT:  Correct.

4          THE COURT:  And, unfortunately, you are unlikely to get

5  much in the way of that at the Bureau of Prisons.

6      You understand that, when you come out, some of those issues

7  that drove you are still there; they're not going to just go

8  away.  Do you intend to pursue the therapy for those things?

9          THE DEFENDANT:  Absolutely.

10         THE COURT:  All right.  Anything else you want to say to

11 me, Mr. Sanchez?

12         THE DEFENDANT:  No.

13         THE COURT:  Okay.  I appreciate it.

14     Thank you, Ms. Stamm.

15     Mr. Cowan, it seems to me that the last few months you have

16 said a number of times, "I've never had a case quite like this."

17 Can we say that about this one too?

18         MR. COWAN:  Absolutely, Your Honor.

19         THE COURT:  Yeah.

20     Any observations that you want to make to me from your many

21 decades of doing this?

22         MR. COWAN:  It's only been two decades, Your Honor.

23     No.  My thoughts about this case are on two extremes.  On one

24 extreme, as a government employee -- and as you were a government

25 attorney yourself in the past -- it is a terrible offense, the

1 idea of grabbing someone's A-File and gleaning information to

2 financially benefit yourself. On the other hand, I think

3 Mr. Sanchez is a very, very likeable person, and he is, in my

4 time in his interview, as you just witnessed, so articulate and

5 so remorseful and so accepting of responsibility. I also admire,

6 for whatever reason, the idea that "It's time for me to pay the

7 piper, and I'm just going to start doing my time now." He will

8 benefit because he will get out sooner, but it was admirable

9 nonetheless. I still wish him every success in the future and

10 hope he gets through this.

11        THE COURT: Yes.

12    And tomorrow morning I'm doing a sentencing on an individual

13 who fought extradition from Canada for ten years and, you know,

14 now doesn't want to face it. "I have completely changed my life,

15 and I have two more children, and all these things happened.

16 Don't punish me for what happened way back then."

17    So there is a certain advantage to dealing with it straight

18 up, straight on, so you can move past it.

19    Thanks, Mr. Cowan.

20    All right. There's no suspense here about what the sentence

21 is going to be, by virtue of the agreement of the two parties

22 here, which I find to be consistent with both the sentencing

23 guidelines and what's just and fair, considering the mitigating

24 and aggravating circumstances. So I will follow that and impose

25 a two-year sentence on Count 1 and a two-year sentence on

1   Count 2, to run consecutive, for a total of 48 months of

2   imprisonment.

3        Mr. Sanchez, upon your release, you will be on four years of

4   supervised release subject to standard conditions and the

5   following special conditions:  You will participate as instructed

6   by probation in any program approved for treatment of any

7   substance abuse or drug dependency, which will include testing.

8   You will provide probation with access to any requested financial

9   information, including the authorization to conduct credit checks

10  and obtain copies of tax returns.  You must disclose all your

11  assets and liabilities to probation and not make any transfers of

12  assets without prior disclosure to probation.  You will maintain

13  one single checking account in your name for all deposits and

14  withdrawals and payments.  Any account that you have an interest

15  in must be disclosed to probation.  You should not do any

16  gambling or enter or frequent any legal or illegal gambling

17  establishments.  You will participate in any mental health or

18  counseling program approved by U.S. Probation, and you should

19  contribute to the cost of any treatment programs, to the extent

20  you are financially able to do so.

21       There is restitution due in the amount of $190,345.63, which

22  is due immediately.  Any unpaid amount will be paid during the

23  period of supervision in monthly installments of not less than

24  10 percent of your gross monthly household income.  I will waive

25  interest on the restitution.

1    You will submit to search of your person, property, house,

2  residence, storage unit, vehicle, papers, computers, and all

3  electronic devices at a reasonable time and manner by probation

4  or by law enforcement.

5    I will waive the fine because of the large amount of

6  restitution, but there is a $100 special assessment on each of

7  the two counts for a total of $200, which is due immediately.

8    And, Ms. Stamm, did you have a placement recommendation in

9  the case?

10    MS. STAMM:  I did.  It's FCI --

11    THE COURT:  Sheridan, was it, or --

12    MS. STAMM:  I can't remember.

13  Loretto, which is in Pennsylvania.

14    THE COURT:  All right.  I will make that recommendation.

15  Do you know how to spell that?

16    MS. STAMM:  Yes.  It's L-o-r-e-t-t-o.

17    THE COURT:  The Loretto facility in Pennsylvania.

18    All right.  And, Ms. Stamm, was there a waiver of appeal also

19  as part of the plea agreement here?

20    MS. STAMM:  I don't believe so.

21    THE COURT:  Okay.  All right.  Then I'm going to advise

22  you, Mr. Sanchez, that you have the right to appeal the sentence

23  here that I have imposed, even though it was an agreed sentence.

24  If you want to appeal, you must file notice within 14 days of

25  today.  If you can't afford the costs of the appeal, the

1  government will pay them for you.  If you want an attorney for

2  the appeal and cannot afford one, the Court will appoint an

3  attorney for you, and the clerk will assist you in preparing any

4  papers necessary for your appeal.  Do you understand that?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  All right.

7      Now, there's no denying, Mr. Sanchez, the dark demons that

8  set you on the road to ruin.  And that's really what it was.  It

9  wasn't so much that you were trying to get money; you were on a

10  self-destruction path, using incredible amounts of sleeping

11  medication, taking terrible care of yourself, and committing an

12  offense that you were bound to be caught doing.  So we recognize

13  that that was the primary motivation here, not mere avarice or

14  greed or anything like that.  However, the flagrant abuse of

15  trust and the really shocking exploitation of some of the most

16  vulnerable victims necessitates a significant prison term, and

17  these four years is a significant prison term.

18      Upon your release from prison, you will have an opportunity

19  to make restitution, repentance, and to repair your life.  You

20  have a lot to make up for, but you have the potential to do so.

21  It will require a lot of hard work.

22      Now, the place where you are going in the Bureau of Prisons,

23  you'll see a lot of very damaged individuals, and you have skills

24  and talents to be of assistance to them.  That's part of

25  starting your repentance too, is doing for others who are as

1  damaged or more damaged than you are by their own childhood,

2  their own experiences.  So don't just consider it four years of

3  sitting there.  I know you won't.  But you have a lot of work to

4  do.  You have the potential to do it.

5      So thank you very much.

6      Counsel, yes.

7          MS. HARVEY:  Your Honor, I apologize.  I wanted to note

8  that, pursuant to the plea agreement, Mr. Sanchez did waive

9  rights to appeal or collaterally attack his conviction and

10  sentence.

11          THE COURT:  For anything except ineffective assistance

12  of counsel, correct?

13          MS. HARVEY:  Correct.  Yes.

14          THE COURT:  I don't think Mr. Sanchez is going to

15  appeal.  He got exactly what he asked for.  But I'm glad you

16  pointed that out to me, counsel.

17          MS. HARVEY:  And if I might, Your Honor, there was a

18  Victim Impact Statement that we received late in the process.  I

19  provided that to probation and to Ms. Stamm.

20          THE COURT:  Yes.  And I got a copy of it too --

21          MS. HARVEY:  Okay.

22          THE COURT:  -- from one of the individuals who is in

23  Korea, and it details how difficult it is dealing with the

24  identity theft and all the issues that come with it.  And while

25  it's the only Victim Impact Statement you received, you can

1  guarantee that there are scores of people out there who are

2  affected by this who are just as innocent and just as worthy of

3  our respect for being victims.

4      So thank you for bringing that to my attention.

5          MS. HARVEY:  May I raise one final issue?

6          THE COURT:  Sure.

7          MS. HARVEY:  I apologize.

8      In Mr. Sanchez's plea agreement, he acknowledges that in

9  addition to the $190,000 restitution, there's also an amount owed

10  to the IRS for his false filings on tax returns.  That amount has

11  not been determined at that point.  I just wanted to -- or at

12  this point.  Excuse me.  I just wanted to note that for the

13  Court, and to note that the department will likely pursue that

14  once we have a finalized number from the IRS.

15          THE COURT:  Okay.  But that would be separate from --

16          MS. HARVEY:  Sure.

17          THE COURT:  -- restitution.  It will be a tax liability

18  that they will proceed their own way on.

19          MS. HARVEY:  Yes, sir.

20          THE COURT:  Yes.

21      And you understand that, Ms. Stamm and Mr. Sanchez, correct?

22          MS. STAMM:  Correct.

23          THE DEFENDANT:  (Nods affirmatively.)

24          THE COURT:  Okay.  Great.

25          MS. HARVEY:  Thank you, Your Honor.

1          THE COURT:  Thanks very much.  We will be adjourned.

2     Thank you, counsel.

3          THE CLERK:  Did you get the judgment?

4          THE COURT:  The judgment.  I'm sorry.  Yeah, I have to

5     sign it first.  Yeah.

6     That's why I have Kerry here.

7          MR. COWAN:  Good job, Kerry.

8          THE COURT:  You can approach, Ms. Harvey.

9          MS. HARVEY:  Thank you, Your Honor.

10         THE COURT:  It seems to be in order, Ms. Stamm?

11         MS. STAMM:  It does, Your Honor.

12         THE COURT:  I have signed the judgment in the case.

13    Good luck to you, Mr. Sanchez.  Thanks, counsel.

14    We will be adjourned.

15                    (Adjourned.)

16               C E R T I F I C A T E

17

18    I, Nickoline M. Drury, RMR, CRR, Court Reporter for the

19    United States District Court in the Western District of

20    Washington at Seattle, do certify that the foregoing is a correct

21    transcript, to the best of my ability, from the record of

22    proceedings in the above-entitled matter.

23

24               /s/ Nickoline Drury

25               Nickoline Drury